# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ALEXANDER CARBONELL,**

        **Plaintiff,**

**-vs-**                                              **Case No. 6:11-cv-400-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act. The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

      In this highly unusual social security appeal, Plaintiff–who suffers from schizophrenia, anxiety, depression, and panic disorder – previously received disability benefits for almost thirty years (from the 1970's to 2002) from the Social Security Administration and is considered 100% disabled by the Veterans Administration from a service-connected head injury. However, Plaintiff's benefits were apparently terminated in 2002; he eventually reapplied and was found to be disabled as of December 2006, thus, he is currently receiving disability benefits. His only challenge in this appeal then is the denial of benefits (or apparent cessation benefits) for the four-year period, from February

2002 to December 2006. Although Plaintiff and his counsel raised the issue of the previous cessation and potential application for restarted benefits at his hearing and in written correspondence to the SSA, the ALJ failed to address it, instead granting benefits from the date of a consultative examination which took place *prior* to Plaintiff's renewed application[1].

Because the ALJ failed to address Plaintiff's 100% disability rating from the VA which is entitled to great weight, and failed to fully develop the record with Plaintiff's other applications or SSA record in spite promising to do so, it is recommended that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.  BACKGROUND

### A.  Procedural History

On May 15, 2007, Plaintiff filed for a period of disability, DIB and SSI benefits commencing on February 1, 2002, due to anxiety, depression, panic disorder and schizophrenia. R. 18, 146-48, 827, 832. A notation in an SSA record indicates that Plaintiff's disability benefits ceased following a "DIB cessation done 11/01" and the last payment he received was for January 2002. R. 165. Plaintiff's May 2007 application was denied initially and upon reconsideration. R. 69-70, 92-93. Plaintiff requested a hearing, which was held on December 11, 2009, before Administrative Law Judge Michael J. Amendola (hereinafter referred to as "ALJ"). R. 26-66. In a partially-favorable decision dated January 27, 2010, the ALJ found Plaintiff disabled as of December 4, 2006[2], which was not until four years after Plaintiff's alleged onset date (and the same month his benefits ceased (February 2002)). R. 9-23. Plaintiff timely filed a Request for Review of the ALJ's decision, arguing that he was entitled to benefits since February 1, 2002. R. 6. The Appeals Council denied Plaintiff's

---

[1] The fact that the examination occurred prior to the "new" application would lead to a conclusion that a prior application or cessation proceeding existed, but the ALJ did not address it.

[2] Plaintiff's date of last insured was December 31, 2006. R. 14.

request on February 25, 2011. R. 1-5. Plaintiff filed this action for judicial review on March 16, 2011. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff was born on April 29, 1942, and he remembers successfully completing the third grade, but never received a general education diploma, although he previously would represent to prospective employers that he received his general education diploma when filling out job applications. R. 63, 165. Plaintiff has the ability to read, write and speak English. R. 169. He served in the U.S. Army from 1969 to 1971. R. 147, 485. Plaintiff has not worked since December 31, 1977, due to his impairments. R. 170.

Plaintiff served in the U.S. Army from 1968 to 1971 and received a medical discharge. R. 485. He testified at the hearing that ever since the 1970s, he has had a disability rating of 100 percent from the Veteran's Administration ("VA"). R. 34. In 1970, Plaintiff was hospitalized because of head and back injuries and has been seeing mental health professionals ever since. R. 485. His initial diagnosis was schizophrenia and was later diagnosed with chronic anxiety, depression and behavior disorder. R. 485. Plaintiff's VA treatment records from February 2002 through December 2009 show that Plaintiff had a 3-vessel bypass graft surgery in August 2002 (R.  R. 485-486); he was also treated for diabetes mellitus; anxiety; chest pain; neck, back, and shoulder pain; and black-outs. R. 327-825, 860-953, 968-1077, 1122-1872, 2060-2122.

In his partially favorable decision, the ALJ found that Plaintiff had suffered since February 1, 2002 from degenerative joint disease of the lumbar spine, diabetic neuropathy, diabetes mellitus (insulin dependent) and status post coronary artery bypass graft, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16-17. The ALJ determined that Plaintiff's alleged impairment of anxiety-related disorder did not significantly limit

his ability to perform basic work activities and was not severe. R. 17. He found that Plaintiff did not meet the listing for a mental impairment for Listing 12.04 because he did not have marked restrictions, but had only mild difficulties in activities of daily living, social functioning, concentration, persistence or pace, and had no episodes of decompensation of extended duration; his mental functioning was also within normal limits. R. 17.

The ALJ determined that prior to December 4, 2006 (the date the ALJ determined that Plaintiff became disabled), Plaintiff retained the residual functional capacity (RFC) to perform medium work; however, beginning December 4, 2006, Plaintiff had the RFC to perform only light work. R. 17, 20. Based upon Plaintiff's RFC beginning February 1, 2002, the ALJ determined that he could not perform past relevant work[3]. R. 22. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that prior to December 4, 2006, Plaintiff could perform work existing in significant numbers in the national economy based on his RFC for medium work, but beginning on December 4, 2006, there were no jobs in the national economy that Plaintiff could perform. R. 22-23. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, prior to December 4, 2006 but became disabled on that date and has continued to be disabled through the date of the decision. R. 23.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred by finding Plaintiff credible only to the extent he alleged disability after December 4, 2006 (R. 20), even though Plaintiff's condition had not changed, and in the face of Plaintiff's testimony regarding his 100% VA rating. Second, he claims the ALJ erred by failing to develop a full and fair record of Plaintiff's full

---

[3]Plaintiff had no past relevant work within the prior 30 years, having not worked since the late 1970's.

-4-

social security history, and the case should be remanded for an award of benefits. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

When considering a new application for disability benefits, the ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical

or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Although the Commissioner argues that it was Plaintiff's burden to produce evidence of his disability, the Commissioner also argues in a contradictory fashion that Plaintiff's case "involves a termination of benefits, not an initial denial of an application for benefits.

When considering a case for termination or cessation of benefits, as Plaintiff alleges occurred effectively in January 2002 when he stopped receiving benefits, the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff had experienced "medical improvement." *See Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982) (in disability benefits cases involving cessation of a disability, "medical improvement standard" places burden on government to prove, in all relevant respects, that the claimant is no longer disabled as of cessation date), *superceded by statute on other grounds as stated in Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991); *Huie v. Bowen,* 788 F.2d 698 (11th Cir. 1986) (benefits could not be terminated until medical improvement was shown).

## III.   ISSUES AND ANALYSIS

### A. VA Disability Rating and Failure to Obtain VA Records

Plaintiff contends that the ALJ erred in failing to indicate what weight, in any, he gave Plaintiff's 100% disability rating from the VA. R. 9-23. The Commissioner concedes that the ALJ

did not specify any weight for that alleged determination, but contends that since the ALJ mentioned Plaintiff's VA disability rating of 100% and discussed Plaintiff's VA medical records, he properly considered Plaintiff's medical conditions as a whole and implicitly gave the rating some weight. Doc. 17.

Plaintiff suffers from anxiety, depression, panic disorder and schizophrenia, in addition to back and heart impairments. R. 18, 827, 832. Plaintiff testified at the hearing that ever since the 1970s, he has had a disability rating of 100 percent from the VA. R. 34. Plaintiff was hospitalized after suffering a head injury and concussions, as well as a back injury; he spent most of the time from 1970 to 1973 hospitalized for his back and mental condition, for periods of six months at a time. R. 33-34. He was medically discharge at 100% disability rating and has been ever since the 1970s. R. 34.

The ALJ noted Plaintiff testified he had been rated 100% disabled by the VA and had been receiving benefits for thirty years. R. 18, 34. Plaintiff argues that following Plaintiff's testimony that he was found 100% disabled by the VA, and realizing that VA records were missing, in order to formulate the decision, the ALJ should have sought further information regarding the VA's disability rating because the ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

The Commissioner argues that the ALJ properly ignored Plaintiff's VA disability rating because Plaintiff did not provide the Commissioner with the VA's determination and it is not contained in the record, although it is undisputed that the VA medical records do contain references to the 100% disability rating. The Commissioner basically argues that relying on the medical records of the VA– as a provider of medical care–to determine which of Plaintiffs impairments were severe was all that was necessary for the ALJ to do. The Commissioner argues that "[i]t is clear by the ALJ's decision that he *implicitly* found the VA disability rating was entitled to *some, but not great,* weight. Doc. 17 at 18 (citing *Kemp v. Astrue*, 308 Fed. Appx. 423, 426 (11th Cir. 2009) (holding that the ALJ's

references to VA's 30% disability findings demonstrated that the ALJ implicitly found the VA disability ratings were entitled to great weight).

Although the SSA regulations provide that a disability determination by another agency is not binding on the Social Security Administration (20 C.F.R. § 404.1504), the Eleventh Circuit's case law is clear that "[a]lthough the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight." *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (citing *Olson v. Schweiker*, 663 F.2d 593 (5th Cir. 1981) and *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)); *Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1303 (M.D. Fla. 2002) (noting that the ALJ's decision failed to indicate whether he accorded any weight to the VA's disability rating). When an ALJ rejects the VA's findings, the ALJ should state the reasons for doing so in order to allow a reasoned review by the courts. *Morrison v. Apfel*, 146 F.3d 625, 628, (8th Cir. 1998) (citing Mem., Soc. Sec. Admin. Office of Hearings and Appeals 3 (Oct. 2, 1992)). In a case where the ALJ rejected a plaintiff's disability rating because the VA disability criteria differ from the Commissioner's, this Court held that the ALJ erred in failing to accord the VA's rating great weight as required by case law, and remand would be warranted for application of the proper legal standard. *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990) (reversed and remanded for award of benefits on other issues). Here, the ALJ's did not discuss the VA rating, or offer any explanation why he rejected it as evidence of Plaintiff's disability.

The Supreme Court has said, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits and the Council's review is similarly broad." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citation omitted). Where there are references in the medical records to a VA disability finding, the ALJ has the duty to develop the record relating to the other agency's disability findings. *See Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993). Even

though the Social Security claimant has the burden of providing medical evidence establishing disability, "the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues;" this duty exists even when the claimant is represented by counsel. *Id.* In *Baca,* the plaintiff had received a 50% disability rating from the VA based upon ear and joint disease, and he made an application to the SSA for disability benefits based upon arthritis and heart disease. *Id.* at 478. The VA had been evaluating the plaintiff for disability for many years before the expiration of his insured status, and although later records were provided, the plaintiff's VA records for the relevant period were not available at the hearing before the ALJ. *Id.* at 480. The appellate court remanded the case, ordering the Commissioner to make every reasonable effort to obtain the VA records and to consider the VA disability rating for the relevant period. *Id.*

The case of *Weers v. Barnhart*, 2002 WL 69512, *2 (D. Kan. Jan. 15, 2002), is directly on point. In *Weers*, the only evidence of the plaintiff's VA disability rating before the ALJ was plaintiff's own testimony that he had received a 100% disability rating from the VA and was receiving benefits. *Id.* In the disability decision in *Weers*, the ALJ made no reference to the VA disability rating other than plaintiff's testimony but did not discuss what weight or consideration, if any, he gave to such evidence. *Id.* at *4. As in this case, the ALJ did not have any of the findings or evaluations upon which the VA based its rating and the only VA records considered by the ALJ were medical treatment records like those of other health care providers that did not provide a disability rating or disability evaluation. *Id.* at *5. As such, it should have been obvious to the ALJ that the relevant VA records were missing from the record; because the ALJ was aware that the plaintiff claimed a 100% VA disability rating yet failed to obtain the missing VA records, the district court remanded the case for the ALJ to obtain the relevant VA disability records. *Id.* at *6.

Similarly, in this case, although the ALJ noted Plaintiff's testimony that the VA had assigned Plaintiff a 100% disability rating "on discharge from the military" in the early 1970's because of his

-9-

mental and back conditions (R. 32-34), the ALJ failed to obtain VA records supporting that disability rating. In this case, although the ALJ is required to accord great weight to the VA's disability rating, and there were indications that the 100% disability rating had been assessed since the 1970's in VA medical records, the ALJ gave no discernable weight to the VA's 100% rating for Plaintiff's condition. Particularly here where Plaintiff's other SSA application forms and records were admittedly not in the file, the ALJ had a duty to obtain them. Accordingly, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.

### B. Failure to Obtain Previous SSA Records

Plaintiff contends that although he raised the termination of his benefits and lack of notice to him of the termination, and the ALJ stated that he would obtain the missing portion of Plaintiff's file, the ALJ did not comply with his duty to fully and fairly develop the record and obtain readily available relevant evidence in the possession of Social Security as requested. Plaintiff argues that the medical records show he was consistently suffering from the same impairments in February 2002 as in December 2006; his medication is well documented and he has been prescribed anywhere from sixteen to twenty-five medications at a time. The Commissioner argues that the ALJ never promised he would get the prior records and his decision was properly based on the objective medical evidence in the record between 2002 and 2006.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). The physical and mental consultative physicians noted Plaintiff's respective histories in their reports. On December 4, 2006, Dr. Sam Ranganathan performed a consultative physical evaluation of Plaintiff at the request of the Office of Disability Determinations. R. 826-28. Dr. Ranganathan reviewed Plaintiff's VA outpatient records and noted he suffers from diabetes mellitus, neck pain/sprain, multilevel mild degenerative changes at the disc level, more significant at L4-5, facet arthropathy of L4-S1 and artherosclerosis. R. 826. Dr. Ranganathan noted Plaintiff had

been receiving disability benefits for thirty years when they were "discontinued in 2001 due to some mismanagement." R. 826. Dr. Ranganathan's final impression was: history of schizophrenia; history of diabetes mellitus insulin dependent; status post coronary artery bypass graft surgery and cholecystectomy; and degenerative joint disease of the lumbosacral spine. R. 827.

On December 5, 2006, Dr. Rosemeri Clements, Psy.D. performed a consultative mental examination of Plaintiff. R. 829-30. Dr. Clements' final diagnosis of Plaintiff was: panic disorder without agoraphobia; pain disorder associated with both psychological factors and back injury; chronic back, neck and wrist pain; controlled diabetes, high cholesterol, and blood pressure; heart disease; history of head injury; occupational and financial problems; limited social support; limited contact with family members; extremely poor coping skills; and assigned a Global Assessment of Functioning of 51. R. 832-33. The doctors made these assessments after meeting with Plaintiff and reviewing his past medical records, primarily from the VA. The medical records covered the time period at issue, February 2002 through November 2006. Plaintiff argues that the medical reports from December 2006 document the mental conditions that Plaintiff had been diagnosed with for 30 years and there is no evidence that Plaintiff's condition changed or worsened particularly in December 2006.

On June 4, 2007, the Social Security Field Office conducted a disability evaluation of Plaintiff. R. 197-200. The examiner noted that Plaintiff had difficulty understanding, concentrating, talking, answering, sitting, standing and walking. R. 198-99. He also noted it was obvious that Plaintiff had a mental disease and had previously received disability that was terminated; he noted Plaintiff had difficulty with understanding, concentrating, talking, answering, sitting, standing, and walking. R. 199. The SSA examiner wrote:

> This claimant has been the most difficult claimant I [have] ever had. He was very argumentative and never answered a question yes or no. There is no simple answers for him. He was hostile and angry. *It is obvious that he has a mental illness.* There

-11-

> ha[ve] been two prior periods of disabilities. One was terminated because he did not follow up with the medical CDRS[4]. He has been disabled since 1970.

R. 199 (emphasis added).

In December 2009, at the hearing and beforehand, Plaintiff raised the issue of the incomplete record and Plaintiff's missing prior applications. Prior to Plaintiff's hearing before the ALJ, on December 4, 2009, Plaintiff's attorney wrote a letter to the ALJ requesting that the ALJ obtain all of Plaintiff's prior Social Security files because Plaintiff was unclear why his benefits were terminated in 2001. R. 143, 325. Plaintiff also indicated that there was at least one other reapplication for benefits prior to the application that was before the ALJ and the records would "contain a great deal of relevant medical information regarding Plaintiff's long standing disability" and there was "an issue as to whether the evidence will support a decision to reopen one or more of those prior claims." R. 143, 325.

At the hearing, Plaintiff testified about the history and termination of his disability benefits as follows:

> Q One thing which probably needs to be cleared up is that apparently at one time you were receiving disability benefits from Social Security?
>
> A Yes, from '71.
>
> Q Until about when?
> A Sometime In late '70s, because they had a problem with some children over payment and nothing to do with me. I was trying some work, but I wasn't possible to continue.
>
> Q Okay.
>
> A And they never took the disability away. They just claimed they were taking money back. But they kept going that way, messed up too many times, and in Miami, the Judge, after about six years, judged it back to me retroactive to the first day they stop making the payments because they didn't have much evidence or fact, so the judge ruled in my favor. They only paid me from six months on after the ruling, and my

---

[4] The Court is unaware of the exact meaning of this acronym, but it underscores the crux of Plaintiff's explanation that his benefits were not terminated based on medical improvement, but on a failure to "follow up."

-12-

attorney, which was from VAB, he had to go to another job, they send him, and I didn't have no representation to continue.

Q So where did they -- when did they stop?

A In 2001 they stopped it again and I was dealing with them on 800 number, and with three addresses for them to send me mall, they claimed that because of rules of record, they found me not disabled. I kept going to the office, just calling on the 800. I kept going through '03 and into '04 and I'm sure that in late '04, '05 they took applications, but mostly I'm sure they never went through because in '05, at the end of the year, I put in another one, which was always with their help. In '06 I had to go back and they started telling me that I should be applying for retirement instead, and about sometime after that, the manager insisted that he makes the decisions in that office, 434, that I had nothing to complain if it didn't go through a board, and It had to be sometime '05 or '06.

Q Right. And then they sent me to doctors in the end of '06.

A And that's when they still insisted that I was still disabled, and when I went back to that office the manager insisted that there was no need for any boards at that time, specifically.

Q Okay.

A And he insisted that I do two applications, what you call it, a what was that you called it before? The one now, in '07.

Q The reapplication, the new application?

A Well, yeah. And that I was also to have help from -- a lady help me to put in for retirement at 65, which I haven't heard nothing of that either. And those two things were done then.

Q Okay. *There has been a lot of activity in this file, some of which I don't have, and I may have to attempt to acquire it.* I have that going in another case, and sometimes it's difficult to go back a substantial period of time, *but I'll certainly make every effort prior to a decision.* So, in around 2001, they stopped your payments because they felt you were able to –

A They said as of record. I asked them to send me anything and I never got it. I ask them to send me whatever they claim, that things didn't get to me. I ask to mail those things to me, to see, and they never really came.

Q So you're not really sure why they –

A Never happen.

-13-

Q Okay.

A I never have a -- this is why I kept going to them, because I kept asking why, why, why. Show it to me. Give it to me –

Q And was this in the Orlando office? I need the proof.

A This was -- I was calling the 800 number because I was being in a lot of different places, so I kept my own house address that I had In Opa Locka, I kept the address that my son had moved to, and there is a few address in there that I'm sure -- they always had it.

Q Okay.

A And the fellow was insisting, it was an Oriental-speaking person, that sorry, I can't do nothing and this and that, and I called them almost every day for about – more than three to six months, until I was told by the same fellow that I was not disabled anymore because checks were not getting into the account.

R. 29-32.

Also at the hearing on December 11, 2009, the ALJ and Plaintiff's attorney discussed the importance of the ALJ obtaining the prior Social Security files:

Atty: Thank you, Your Honor. I did do a letter to you asking if you could get the, from Social Security, when those prior applications were –

ALJ: Yes.

Atty: You mentioned the consultative exams were actually done before this application, which bears out that there was some sort of application pending.

ALJ: There was, and I received some records, not all, and when I go back probably next week to review this case, I'm going to see if that would be fully necessary. *The reason for the termination is still up in the air and wasn't really clarified here today for obvious reasons*, and – but this will be a grid. It is just a question of what date I need to attach to it.

Atty: I understand, your honor, but if you do decide to go back earlier than '07, again, there may be a prior application that you may be able to reopen.

ALJ: Yes. It would be – it would be within his date last insured. I would insure [sic] that. And I would suggest a date, a 12/06, which I'm keeping open. I will examine the records in '02 as alleged and see if between there and '06, his date of last insured is 12/31/06, so there would be a griding within his date of last insured.

Atty: Thank you, Your Honor.

R. 64-65 (emphasis added).

Plaintiff argues the ALJ erred in failing to obtain the records as he represented he would. The Commissioner contends that the 2001 decision was final because Plaintiff did not appeal it at that time. Notwithstanding the Commissioner's arguments that the ALJ "implicitly denied" Plaintiff's requests to reopen the cessation of benefits (R. 325), in actuality the ALJ agreed that "the reason for the termination was up in the air" and that he would examine the relevant records. However, in the ALJ's decision, he makes no mention or obtaining or reviewing those records.

Plaintiff contends that the cessation of benefits decision was not final because he never received notice of it and, due to his anxiety and schizophrenia, he did not understand what happened. Plaintiff testified that he did not receive a written notice regarding the termination of his benefits in 2001. R. 31. He contends that the time to appeal begins to run when he receives a written notice, and since he did not receive a written notice of termination, the ALJ had jurisdiction to review the 2001 termination. If Plaintiff did not receive a written notice, then the alleged decision is not final. In addition, Plaintiff has a serious mental impairment and testified he did not understand what happened R. 31. Termination of Plaintiff's benefits under the circumstances present in this case would violate Plaintiff's right to notice and an opportunity to be heard. In Plaintiff's case, he testified that he did not know why and did not understand why Social Security stopped his disability payments and Social Security failed to send him anything in writing. R. 31. The Commissioner does not respond directly to these due process arguments but argues instead that it was Plaintiff's burden to provide evidence of an earlier onset date than December 2006.

The Commissioner's brief treats this case as simply an application for new benefits and argues that the ALJ's selection of December 4, 2006 as the onset date was not arbitrary, but was based on substantial evidence and "decided by the proper legal standards." Doc. 17 at 4-5. The Commissioner

contends that the February 2002 onset date would be "completely at odds with the medical evidence."
Doc. 17 at 5. The Commissioner relies on the standard of review for a new application, *i.e.*, that the
claimant –not the Commissioner– bears the burden of providing evidence that he was disabled. Doc.
17 at 6, 19. However, particularly since the most relevant portion of Plaintiff's SSA administrative
file discussing the cessation or reapplication is missing, it is not clear which is the appropriate
standard of review – if the cessation of benefits standard should have been applied the burden would
be on SSA to show Plaintiff's "medical improvement." Without knowing the actual reason for
Plaintiff's cessation of benefits or whether he received notice (and or understood the notice for that
matter), the vast majority of the Commissioner's argument that Plaintiff did not meet *his* burden of
production of disability is unhelpful to the Court's analysis, because it is not clear whether the burden
was actually on the SSA to show "medical improvement." *See* Doc. 17 at 8-16. Besides the fact that
the VA, who was treating Plaintiff, believed he remained 100% disabled from 2002 to 2006, there
were notations in the VA records that Plaintiff was experiencing dizziness, black outs, and had passed
out during the relevant time period. R. 358, 377, 431.

Although the ALJ represented that he would "examine the records in '02 as alleged," there is
no discussion in the ALJ's decision that he did so. As Plaintiff points out, the ALJ never got
Plaintiff's prior Social Security files before rendering a decision on January 27, 2010 and the ALJ
failed to even reference the prior Social Security files in his decision. R. 9-23. The ALJ only briefly
mentioned the fact that Plaintiff had received benefits for over thirty years, and even then only in the
context of that being Plaintiff's testimony: "At the hearing, [Plaintiff testified] that he was receiving
Social Security disability payments from 1971-2001. [Plaintiff] testified that a Social Security
representative from the local office informed [him] that his disability payments had stopped. The
representative informed him that he was no longer disabled." R. 18. While this accurately
summarized Plaintiff's testimony, it was the ALJ's obligation to follow up on the testimony and fully

develop the record, potentially reopening the earlier cessation of benefits decision, which (based on Plaintiff's testimony) was the result of some sort of administrative or communication failure. Plaintiff's VA disability rating had not changed in the previous thirty years and it is highly doubtful that his condition met the standard for "medical improvement."

Particularly in light of the fact that the ALJ's recognition that the consultative examinations, which he used to establish Plaintiff's onset date, were part of an earlier application or reapplication, it was error for the ALJ not fully develop the record and obtain the full file and explain what had happened with the SSA between late 2001 and 2006. Arguably, as the record currently stands, the file was lost in the bureaucracy and Plaintiff's benefits were terminated not because of "medical improvement" but because of a communication failure. It was the ALJ's obligation to develop the record, and in this case the internal SSA record, to determine which standard of review to apply and only then determine whether Plaintiff had received notice and shown "medical improvement." The ALJ failed to develop the record. Accordingly, the ALJ's decision was not based on substantial evidence.

Plaintiff moves for a remand for benefits. Remand for an award of benefits is appropriate only where the Commissioner has "already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Under the facts of this case, with a significant and relevant portion of Plaintiff's file missing, it is not clear which standard the ALJ should apply to determine Plaintiff's disability status in 2002 to 2006. The case must be remanded for the ALJ to obtain the complete file and determine which standard to apply.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Court respectfully **RECOMMENDS** that the District Court **REVERSE** and

**REMAND** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of the Court be directed to enter judgment, and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 11, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy